You're planning to switch sides? Sit still. What was that? I think the, I don't, excuse me, I think the argument was to be combined. Oh, did we issue an order combining it? Yes. Yes. Oh, search me. I don't remember issuing an order, but you know what, I'm good with that. See you all later. Thank you both for your arguments. I'll accept that. You're okay with that too? Yes, Your Honor. Very good. Okay, let's move right along. That was the fastest argument I've ever heard. We'll be out. Okay, next case will be 2014-3123 Appleberry v. DHS. And I just say that. She didn't work. Is it Mr. Schleicher? Schleicher. Mr. Schleicher, please proceed. May it please the court, here on a challenge of an arbitrator's decision in a federal employee case. Fortunately, federal employee law can or at least should be simpler than patent law. Boiling this case down to five questions, it can be resolved. First, in a Chapter 43 case, must an arbitrator apply the same standards as the Merit Systems Protection Board? We know that it can. The Supreme Court said so in Cornelius v. Nutt. Can I just focus on, I guess, what it seems to me, at least to me, is the nub of this. This is not like Cornelius, where there's a different substantive standard being applied. And indeed, Cornelius says, quotes, was it 7121 or something that says, when a matter goes to an arbitrator, and then there's language there about it being presented properly under the collective bargaining agreement, then the board standards under 7701C or something apply. But Cornelius was a matter in which the matter was presented properly to the arbitrator. The problem here is that it looks for all the world like this matter was not presented properly. That is to say, there's a collective bargaining agreement that seems to say these procedures are exclusive. This is 38A, which to me is the most important of the clauses that says, if you have a grievance, not one of the excluded ones, and we don't seem to have an excluded one, particularly about the PIP plan and the failure to live up to the PIP plan, here's how you have to challenge it. And you didn't complete that process. In which case, that matter is over. Where's the wiggle room out of that logic? The wiggle room is that we're seeking consistency between the arbitration forum and the MSPB. The MSPB would not even hear a challenge to a PIP. They would not hear a challenge to a PIP closeout letter. They would only hear the challenge to the removal. Then they would say, as part of this, we're automatically going to look at whether the agency has demonstrated, whether it's carried its burden of proof on establishing that the standards were valid, they were communicated. I don't see the government having opposed the argument you made that had this case been brought in the MSPB, all of these things would be fair game. I don't see them opposing that idea. But that's not where you chose to bring it. And there are lots of instances where different forums, administrative versus judicial versus other, have different scopes of authority in terms of what they can and cannot hear. You chose to bring this through the arbitration channel, through the grievance procedure, the removal. You had multiple choices of forum, but you chose this one. If Judge Toronto's reading is correct, how does... I mean, I have to be honest, it's irrelevant what the MSPB could have heard. You didn't bring it there. How is it that you can bring it here under these circumstances? Again, we have to... We're aiming for consistency between the arbitration forum and MSPB, so... Why? Why? There are all kinds of things you can bring in the arbitration forum that you can't bring in the MSPB, like PIP, for example. So why is it shocking that there's something you could have brought in the MSPB that you can't bring in the arbitration forum? It's shocking because Chapter 43 of Congress has specifically said, agencies will let you off with a lower burden of proof if you follow these standards, which the courts in MSPB have said, even if nobody brings it up, even if none of the parties mention it ever, we have an obligation to determine if the standards are objective, if they're achievable, if the employee actually failed those standards. And you had a chance to do that through the grievance procedure and the arbitration procedure, but you didn't pursue it. You filed a grievance and took it, what, two or three levels up, but then didn't take it through to arbitration. So you absolutely had the right to challenge all of that, but you didn't do it. And the collective bargaining agreement says that if something is not challenged all the way through to arbitration, it's deemed withdrawn. So it's as if those were never even filed. So then the question arises, must you in an arbitration file a separate grievance, or go all the way to arbitration over the PIP and the PIP closeout letter, which would set up a different standard than MSPB? Cornelius talks about inconsistency, and I agree there are some differences in those forums, but they're not in areas where Congress, like in Chapter 75 or Chapter 43, has set very specific rules for how it's going to be handled. If they want to negotiate some different terms and procedures over, you know, the height of a water fountain or something like that, that may be allowable. But here we're talking about Congress giving specific rules about how it wants federal employees to be fired. So we have to disregard those rules if we're going to allow an arbitrator to say that you didn't separately. But Congress has not said that in a collective bargaining agreement, there cannot be procedural requirements, including timing requirements, that Congress never specified. And what seems to be going on here is that as part of the deal of getting a lot more things to be reviewable, lots of non-adverse actions and all kinds of things that could never go to the board, there's a set of very specific procedural requirements, which, you know, with the right attentiveness, you can comply with. 30 days or 35 days after the incident, you have to do this, and if you lose, you go to the next step and you have to complete it. I haven't seen anything in what you said that indicate that enforcing those plain requirements is contrary to the statute or that there's something less than plain about them. Either one. The less than plain being my wiggle room question. Is there some language in there that says, oh, here's an ambiguity, and then let's open up the ambiguity to say, well, as long as there's an ambiguity, then we're going to make it a lot more like the board. Well, if there's ambiguity, I mean, the statement in the agreement is that it's withdrawn if it's not followed all the way through to arbitration. So, we're treating this as if they had not arbitrated over the period. And that's why I get back to 38A, which says this is exclusive, and then provisions that say when an incident occurs, you have the following amount of time to complain about it. So, let's assume that it went a bit of the way and then you withdrew it. It's as if it never happened. And then we're back to violating the requirement that within 30, 35 days, you have to grieve about it. Either way, I don't see how it makes a difference. Well, if we look over at the D.C. Circuit, the DHSB FLRA case from 2014, they said using the OIG, talking about the OIG, negotiating over the OIG rules. Since Congress has set up OIG rules, the parties can't negotiate those. They can't even negotiate them in the favor of the employee. They can't negotiate them in the favor of the agency. They cannot change those rules. And our position is that Chapter 43 is the same way. It says this is how you fire a federal employee for performance. And one of those things is the standards. That's automatically an issue, regardless of whether any party ever mentions it. So a party that goes to MSPB, it may not be mentioned. The judge still has to consider it. Under the proposition you're presenting, the party goes to the arbitrator. If they don't mention it, the arbitrator doesn't have to consider it. So that's a different approach to the law than is applied in the MSPB. Laying the arbitrator off without having to consider. I mean, the agency never had to comply with its burden of proof. It's obligated to show that the standards were valid. It never had to do that because it was not a separate arbitration as a PIV. And that's a different application of the law than would be in MSPB. It does not appear disputed that the arbitrator did not follow the same law as MSPB would follow. He refused to address the merits of the case, the merits of the standards. So the question is, is it excused by the contract language? The contract cannot apply different standards than federal law, such as Chapter 43. And as I just said, the parties cannot negotiate away federal law. They can't ignore Chapter 43. If it were some area where Congress was not as specific, certainly the collective bargaining agreement could fill in the gaps. But that's not what happened here. The next question would be what the remedy is. Since the merits were not addressed, this court cannot do as it did in some cases and say we're going to look at the standards and make the decision. Is this a valid standard? It has to go back to the arbitrator. There are some cases that express concern about remanding to an arbitrator because it's not a judge. It's sort of a part-time judge. But here the parties have stipulated that's what would happen. And you see in the arbitrator's decision he says, if and when this case comes back to me, I'll do the following. So it's not in dispute that remand is an appropriate remedy. The arbitrator himself says at page four of the joint appendix, because the earlier things were not litigated all the way through to an arbitration, I've got to consider them as already decided. So the arbitrator is saying that failure to arbitrate those separately and independently barred him from considering the merits. This means that someone choosing between MSPB and the arbitrator is going to have to decide between do I want to arbitrate three things or do I want to go to MSPB where I never had to mention the PIP until I showed up at the door. And that's not the consistency that the Supreme Court talked about in Cornelius. It also encourages the forum shopping because someone's going to have an advantage to go to MSPB where they don't have to have already arbitrated preliminary steps. While MSPB, if you went there and said I'm here to challenge a PIP, they would not let you in the door. You're well into your rebuttal time. You're free to keep using it. All right. Thank you. Ms. Whitbar? May it please the Court. Arbitration is a matter of contract. An arbitrator can only bind the parties on those issues which the party have agreed to submit to him as well as invoke to timely arbitration. Here the parties negotiated very specific timelines for the processing of grievances. Articles 38F, 39B, and 39K specifically set forth the timelines for initiating a grievance, moving those grievances through the grievance process, and invoking arbitration. Do you agree that had she brought her removal claim to the MSPB, all of these issues, the institution of the PIP, the standards by which she would measure, would all be things that could be adjudicated at the MSPB level? Yes, Your Honor. The process, the standards are the same, whether bringing a dispute over the removal at the MSPB or before an arbitrator. It's a substantial evidence standard. However, how those underlying actions are challenged, the sequence, the process is slightly different. At the MSPB, as Your Honor noted, everything is adjudicated at once. Counsel conceded that an employee cannot challenge a PIP, cannot challenge placement on the PIP, cannot challenge the standards individually. All those things would be adjudicatable at the MSPB when she filed this removal arbitration, even though some of the individual things had been subject to grievances which had been withdrawn? Yes, Your Honor. That was an option that was available to her. So when she was removed, she had the option of pursuing, invoking arbitration to the arbitrator, which would be a limited review because she had already grieved some of the underlying steps, or she could have proceeded to the MSPB, in which case the board would have examined the entire removal process at one time. So there's this difference in the process by which these two bodies or these two forums work. One is a review all at once, and that's why it makes sense. In a situation like this, why would Ms. Appleberry ever have sought to go through the grievance and arbitration route with regard to her removal, given that her claim from the very beginning has been the PIP and the standards of the PIP that she was subjected to? It makes no sense. Was it just poor judgment, bad lawyering, bad counsel by the union or whoever? Can you think of any reason that it made any sense for her to go to arbitration, given what were clearly the nature of her underlying arguments, given the government's position on what she can and can't actually bring in arbitration? I can, Your Honor. Arbitration through the grievance process is much more expedited, and she invoked those expedited procedures. So she was able to have an arbitrator look at her removal within about 30 days. Except that the arbitrator decided that he couldn't look at anything in her removal because all of the allegations that she wanted him to look at as part of the arbitration weren't within the purview of what he could look at because of the prior ability to arbitrate those. I think the invocation also demonstrates that she was raising some discrimination issues with respect to the removal. I obviously don't know exactly what Ms. Appleberry's intent was, but kind of reading the record together, I think her intent in challenging the removal was to litigate the discrimination issues, which wouldn't necessarily be precluded at that stage. But your position would or would not be the same if this were simply essentially a lawyer's screw-up? No, Your Honor. No. The timelines, whether it's a lawyer's screw-up or the choice of the employee, I mean, those deadlines are set in the contract. I will say that they're not necessarily jurisdictional. They can be waived by the parties. I would assume they'd be subject to some sort of equitable tolling. So I suppose it's possible if Mrs. Appleberry said something to if the parties agreed to extend the deadlines on some of these things or there was some sort of reason why these deadlines should be extended, that might be something. She didn't seek equitable tolling or something. Did she seek a waiver from the government? She did not, Your Honor. Because the timing here is, and make sure I understand this right because I could have it wrong, but my recollection of the timing is she was grieving the closeout of the PIP. Then the removal came along. Then she decided to grieve the removal and she stopped at that point pursuing the closeout of the PIP. She had not given up and withdrawn the grievance of the PIP until after the removal and after she filed the grievance regarding the removal, which clearly on its face demonstrated her intent because it's actually almost verbatim identical. The section where she complains about the PIP, the grievance, she was pursuing that grievance. And then she got removed and so it looks to me like she flipped it because she just cut and pasted all those arguments into the removal grievance thinking that she was sort of umbrellaing everything together in one grievance and not having all these separate little ones. Doesn't that seem like a really strong case for the government to agree under those circumstances to waive it and let it go forward? Because it seems pretty darn clear in this record, given the timing and the identity of the way the issues were presented, she could have kept pursuing that grievance. She had already been removed, but she instead just sort of swept it all into what she thought was the removal grievance. I think Your Honor is correct on some of the facts. It is a complicated timeline. There are several grievances here. She dropped the grievance before the removal after the proposed removal. She dropped the grievance in the summer. It was proposed removal on June 27th, the same day as the closeout of the PIP. The removal was not actually decided on until October 31st. Her deadline for pursuing the PIP grievance was sometime in the summer. She dropped it before there was actually a removal. I believe Your Honor has all the dates correct, but let me just sort of reiterate our understanding. There's three steps in the grievance. She had initiated the step one. She received the denial on the date she was proposed for removal. She filed her step two grievance. That was then denied. She continued with the step three grievance, which was denied. She had 30 days to invoke that arbitration. She did not. Then there's a period of time that passes. I won't pretend to know what she was doing. There's a period of time that passed, and then she invoked on the removal. When was she removed, I think is the critical thing. October 31st or 30th of 2013. Where was that? Was that after stage three and the withdrawal? Was that between two and three? That was after stage three and after the period to invoke arbitration had passed. That ran on September 30th, I think. That's correct, Your Honor. Can I ask you this question? Two relatively small things. The arbitrator said, and I don't know that this is relevant, but said that she could have grieved the proposed removal. That's one of the specific exclusions of the collective bargaining agreement. I don't think she could have. I think Your Honor is correct. I think that's 38C11. The other thing is this. On standard of review, you make a, I guess I'll call it an extended effort to invoke the deferential standard for reviewing interpretation of collective bargaining agreements that prevails in the private sphere. We've said, as recently as the Garcia case, that the interpretation of the collective bargaining agreement is a question we reviewed de novo and didn't just make that up in Garcia. There are several earlier decisions. Which is it? We withdraw that argument, Your Honor. The court reviews arbitrator's decisions de novo with no deference. If there are no further questions, we ask that this court would affirm the decision of the arbitrator. Thank you very much. Thank you, Ms. Butler. Any rebuttal time left? I'm sorry? Did you have some rebuttal time left? I wanted to identify the point at which I came in on this case. Was it invocation of the arbitration as to the removal? I'll accept blame for anything after that point. The Supreme Court in Penn Plaza in 2009 talked about whether rights were waived when you go to the arbitration forum. And the reason it's acceptable to arbitrate federal rights is that we expect the same rules as to substance to apply, both in arbitration and... Yes, I would say this is whether considering those standards, considering the PIP as part of the removal as a matter of procedure or substance is the key issue. Yes. And so we look to MSPB decisions that say this right to challenge the validity of the standards is a substantive right and one of the most important aspects of the Chapter 43 arrangement for firing employees. If it were some other right, the outcome might be different. But again, this is one that has to be raised sua sponte, even if no one else mentions it. So if she had not filed any other grievances and had gone to the arbitrator, the arbitrator should have applied that same rule. And the arbitrator himself, in the case we cite in our reply brief, the Panama Canal case, quotes Cornelius, the arbitrator in a Chapter 43 case himself said, I've got to apply the same standards as with an MSPB arbitrator or we're going to get inconsistency in forum shopping. Do you have any other questions? No. Thanks, Health Council, for the argument. The case is taken under submission. Our next case for today is 2015-1229, Murnina International v. Candy Quilter.